UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHELLE B.,

          Plaintiff,

      -v-                      5:20-CV-332

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                 OF COUNSEL:

OLINSKY LAW GROUP         HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY           AMELIA STEWART, ESQ.
  ADMINISTRATION         Special Ass't U.S. Attorney
Attorneys for Defendant
J.F.K. Federal Building, Room 625
Boston, MA 02203

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION & ORDER

## I. INTRODUCTION

On March 24, 2020, plaintiff Michelle B.[1] ("plaintiff" or "claimant") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

The Commissioner has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides, *inter alia*, that an appeal from the Commissioner's final decision denying benefits will be treated as if the parties have included in their briefing cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The appeal will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

On October 26, 2016, plaintiff filed an application for SSI alleging that her diabetes, neuropathy, depression, neck and back pain, asthma, and other

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

medical problems rendered her disabled beginning on July 22, 2013. R. at 190.[2]

Plaintiff's claim was initially denied on January 13, 2017. R. at 78–81. At her request, a hearing was held before Administrative Law Judge ("ALJ") John Ramos on November 13, 2018. *Id.* at 29–58. Plaintiff, represented by attorney Howard Olinsky and non-attorney representative Michael Eason, appeared and testified. *Id.* At the close of the hearing, plaintiff amended her alleged onset date to October 26, 2016, the date on which she had initially filed her claim. *Id.* at 57.

Thereafter, the ALJ issued a written decision denying plaintiff's application for benefits from October 26, 2016, the amended alleged onset date, through November 23, 2018, the date of the decision. R. at 15–23. This decision became the final decision of the Commissioner on January 24, 2020, when the Appeals Council denied plaintiff's request for review. *Id.* at 1–3.

## III. LEGAL STANDARD

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[2] Citations to "R." refer to the Administrative Record. Dkt. No. 14.

months." 42 U.S.C. § 423(d)(1)(A). To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520.[3] At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." § 404.1520(a)(4)(i). If so, the claimant is not disabled regardless of his medical condition or other factors. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable condition that "significantly limits" his physical or mental ability to do basic work activities. § 404.1520(c).

---

[3] Section 404.1520 sets forth the five-step evaluation for Disability Insurance Benefits ("DIB"). A parallel set of regulations govern SSI applications. *See* 20 C.F.R. § 416.920(a)(4).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment listed in Appendix 1 of the Regulations (the "Listings"). § 404.1520(d). If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors. § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work." § 404.1520(e)–(f). If so, the claimant is not disabled. § 404.1520(a)(4)(iv).

Finally, if the claimant shows he cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work. § 404.1520(a)(4)(v), (f)–(g). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

The burden of proof for the first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if the claimant shows he

cannot perform his past relevant work, the burden shifts to the Commissioner for step five. *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the "Agency"). 42 U.S.C. § 405(g). However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up).

"A determination . . . that a person is not disabled is conclusive when that decision is supported by substantial evidence." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (Cardamone, J.) (citation omitted). In other words, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart,*

336 F.3d 172, 179 (2d Cir. 2003). Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). This is so regardless of whether or not the decision is otherwise supported by "substantial evidence." *See id.*

## IV. DISCUSSION

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since October 26, 2016, the amended alleged onset date; (2) plaintiff's diabetes, degenerative joint disease of the left knee, and degenerative disc disease of the cervical spine were severe impairments within the meaning of the Regulations; (3) plaintiff's asthma, migraines, thyroid condition, shoulder pain, urinary incontinence, obesity, and mental limitations were not severe impairments; and (4) plaintiff's severe impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 18–19.

At step four, the ALJ determined that plaintiff retained the RFC to perform the full range of sedentary work. R. at 20. The ALJ found that plaintiff had no past relevant work. *Id.* at 22. However, because plaintiff could perform substantially all of the exertional demands of work at a sedentary level, the ALJ relied on the Medical–Vocational Guidelines (*i.e.*, the "Grids") to conclude that plaintiff was not disabled during the relevant

time period. *Id.* at 23. Accordingly, the ALJ denied plaintiff's application for benefits. *Id.* at 23.

## A. **Plaintiff's Appeal**

Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence because he (1) failed to "properly weigh the opinion of long-time treating physician, Margaret Sennett, M.D."; and (2) failed to include mental restrictions that addressed plaintiff's "mild limitations in adapting and managing herself." Pl.'s Mem., Dkt. No. 16 at 11, 16.[4]

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'" *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Samantha S. v.*

---

[4] Pagination corresponds to CM/ECF.

*Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 640 (S.D.N.Y. 2019). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192–93 (citation omitted).

### 1. Dr. Sennett

Plaintiff's first RFC-related argument is about a medical source statement provided by Margaret Sennett, M.D., plaintiff's long-time primary care doctor. Pl.'s Mem. at 11–16. According to plaintiff, the ALJ "failed to establish good reasons for discounting [this] opinion," which "proffered limitations that are preclusive of sustained work activity." *Id.* at 15–16.

Broadly speaking, the Regulations divide evidence from a claimant's medical sources into three categories: (1) treating; (2) acceptable; and

(3) other.[5] The most important of these is the treating source category, which includes a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

The opinion of a treating source regarding the nature and severity of a claimant's impairments is entitled to *controlling* weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted). And when a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight. *Id.*

In fact, a treating physician's opinion may also be properly discounted, or even entirely rejected, when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence. Because plaintiff's claim was filed before March 27, 2017, the prior Regulations still govern this appeal. *See, e.g., Cheri Lee H. v. Comm'r of Soc. Sec.*, 2020 WL 109007, at *6 n.7 (N.D.N.Y. Jan. 9, 2020).

by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case. *Tammy Lynn B.*, 382 F. Supp. 3d at 193–94 (citation omitted).

On November 5, 2018, Dr. Sennett completed a medical source statement that indicates she has treated plaintiff every three to six months for the last nine years. R. at 811–14. According to Dr. Sennett, plaintiff could walk about one city block before needing to rest, could sit for about two hours at a time, could stand for about fifteen minutes at a time, could stand or walk for about four hours in an eight-hour work day, and would need to be able to shift positions at will. *Id.* at 811. Dr. Sennett opined that plaintiff would

need to take unscheduled breaks on a "daily" basis for an average of about fifteen minutes at a time. *Id.*

Dr. Sennett's medical source statement further opined that plaintiff could (1) lift ten pounds "rarely" and less than ten pounds "occasionally"; (2) "occasionally" look up or down, turn her head right or left, and hold her head in a static position; (3) "rarely" twist and "never" stoop, bend, crouch, squat, or climb ladders or stairs; and (4) "occasionally" use her hands, fingers, and arms for manipulating and reaching activities. R. at 812.

As for mental limitations, Dr. Sennett opined that plaintiff was "seriously limited, but not precluded" from working in coordination with or proximity to others and from performing at a consistent pace without an unreasonable amount of rest breaks. R. at 813. However, Dr. Sennett opined that plaintiff had a "limited but satisfactory" ability to (1) remember work-like procedures; (2) understand, remember, and carry out simple instructions; (3) maintain regular attendance; (4) sustain an ordinary routine and complete a normal work day; (5) work in coordination or proximity to others; (6) ask simple questions of, and accept directions from, supervisors; (7) get along with co-workers; (8) deal with stress and changes in a routine setting; and (9) be aware of normal hazards and take appropriate precautions. R. at 813.

Based on all of these findings, Dr. Sennett concluded that plaintiff would be "off task" for "more than 20%" of a normal, eight-hour work day and that

the effects of plaintiff's various impairments would produce "good" and "bad" days. R. at 813. According to Dr. Sennett, plaintiff would need to be absent from work for "about four days per month." *Id.* at 814.

The ALJ devoted a significant portion of his narrative discussion to this November 2018 opinion, but ultimately afforded it "limited weight." R. at 21. In so doing, the ALJ acknowledged that Dr. Sennett was plaintiff's treating physician and "family practitioner." *Id.* However, the ALJ reasoned that Dr. Sennett's conclusions were inconsistent with other evidence in the record, including her own treatment notes. *Id.*

Plaintiff contends that this is reversible error because Dr. Sennett's conclusions are "amply supported" by her own treatment notes. Pl.'s Mem. at 13. In support of this argument, plaintiff recounts evidence from treatment records between March 10, 2016 and March 22, 2018. *Id.* Plaintiff also points to treatment records from Francis Arce, M.D., an endocrinologist to whom plaintiff was referred for treatment for her "uncontrolled diabetes." *See, e.g.*, R. at 674.

According to plaintiff, records from Dr. Arce support Dr. Sennett's findings about plaintiff's "continued pain in her legs and back" and difficulty walking. Pl.'s Mem. at 14 (citing R. at 674). Finally, plaintiff faults the ALJ for relying on plaintiff's activities of daily living. *Id.* at 15. In plaintiff's view, the ALJ

"wholly ignored the qualifications that Plaintiff placed on her ability to engage in these activities." *Id.*

Upon review, these arguments must be rejected. To be sure, "[t]he expert opinions of a treating physician are of particular importance to a disability determination." *Gulczweski v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 490, 498 (W.D.N.Y. 2020) (citations omitted). However, "the ALJ has both the ability and the responsibility to resolve conflicts in the evidence." *Doty v. Comm'r of Soc. Sec.*, 2017 WL 4621630, at *6 (N.D.N.Y. Oct. 13, 2017) (Suddaby, J.).

As relevant here, the ALJ determined there was an inconsistency between the findings of significant physical and mental limitation in Dr. Sennett's 2018 opinion and her own office notes covering the same period of treatment. R. at 21–22. For instance, a treatment note from October 26, 2017 indicates that plaintiff had "no physical disability," that her "activities of daily living were normal," and that her diabetes was better controlled "since working with" her endocrinologist. R. at 776, 778. This note acknowledged that plaintiff had some psychological symptoms and assessed her with depression, but overall plaintiff's psychiatric condition was normal. *Id.* A more recent treatment note from March 22, 2018 noted roughly the same findings. R. at 770–72.

The ALJ also compared Dr. Sennett's findings of limitation with treatment notes from other providers during the same period. R. at 21. These providers

routinely recorded findings that would not be supportive of the restrictive limitations assessed by Dr. Sennett in her November 2018 opinion. For example, endocrinology records from Dr. Arce's office on April 28, 2016, May 12, 2018, and July 31, 2018 all noted that plaintiff's gait was normal and that plaintiff had no joint or muscle pain. R. at 665, 669, 674.

Further, as the ALJ noted, an older consultative examination performed by Richard Weiskopf, M.D. on December 16, 2016 found that plaintiff had full range of motion in her neck and had no abnormalities with her spine. R. at 615. Dr. Weiskopf also found that plaintiff had no sensory deficits or loss of strength in her upper or lower extremities. R. at 616. Based on these and other findings, Dr. Weiskopf assessed only "mild" and "moderate" functional limitations. R. at 616.

In short, the ALJ properly measured Dr. Sennett's 2018 opinion against the other evidence of limitations in the record, found it to be inconsistent with that other evidence, and chose to partially discount the more restrictive findings on that basis. *See, e.g., Noreen D. v. Berryhill*, 2019 WL 217116, at *10 (N.D.N.Y. May 20, 2019) (Mordue, J.) (finding same where "the generally moderate limitations indicated throughout the medical record contradict [the physician's] highly restrictive Medical Source Statement").

Plaintiff's complaints about the ALJ's partial reliance on her ability to maintain a broad range of daily activities fare no better. Of course, a

claimant need not be bedridden to be found disabled. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Indeed, "people should not be penalized for enduring the pain of their disability in order to care for themselves." *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000).

However, the Regulations explicitly direct the ALJ to consider a claimant's activities of daily living when assessing the ultimate question of disability. *See Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018); *see also Coyle v. Comm'r of Soc. Sec.*, 2018 WL 3559073, at *7 (July 24, 2018) (Carter, M.J.) ("[A]n ALJ may rely on Plaintiff's activities of daily living in weighing opinion evidence in the record.").

That is exactly what the ALJ did in this case. In reaching his RFC determination, the ALJ noted that plaintiff testified that she "performs a wide variety of household chores," cares for her grandson, and is able to cook, clean, do laundry, and go shopping. R. at 22. The ALJ determined that these activities were broadly supported by various treatment notes from her providers, which often mentioned that claimant "engaged in light physical activity every week." *Id.* Based on these findings, the ALJ concluded that "claimant has maintained a broad range of daily activities" that is consistent with a sedentary RFC. *Id.*

Plaintiff disputes this conclusion. She insists that she can only perform these daily activities at something far less than a sustained or consistent

pace. As before though, this is the kind of genuine conflict in the record that is up to the ALJ to resolve. *Doty*, 2017 WL 4361630, at \*6. The ALJ found that plaintiff's various activities, coupled with other evidence in the record, were indicative of an ability to engage in the kind of routine that would still permit her to perform sedentary work, which mostly involves sitting with only some occasional walking, standing, and light lifting of no more than ten pounds. 20 C.F.R. § 416.967(a).

As the Second Circuit has explained, "once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (cleaned up). Plaintiff has not carried this burden. Accordingly, the ALJ did not commit reversible error in discussing these activities or in reaching his ultimate conclusion about what these activities tended to show.

### 2. Mental Limitations

Plaintiff's second RFC-related argument is based on the ALJ's failure to include any mental restrictions in his determination. Pl.'s Mem. at 16–18. According to plaintiff, the ALJ failed to explain why he did not incorporate into the RFC the "mild limitations" that he found at steps two and three. *Id.*

In addition to the five-step sequential disability analysis, the Regulations require the application of a "special technique" for evaluating the severity of

a claimant's mental impairments. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). First, the ALJ must determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If so, the ALJ must rate the degree of functional limitation resulting from the mental impairment(s). § 404.1520a(b)(2). This involves consideration of "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. § 404.1520a(c)(4).

These functional areas are measured on a five-point scale ranging between "none," "mild," "moderate," "marked," and "extreme," with the last point on the scale representing "a degree of limitation that is incompatible with the ability to do any gainful activity." § 404.1520a(c)(4). If the degree of limitation in each of these areas is "none" or "mild," the impairment(s) will be considered non-severe absent evidence that "otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." § 404.1520a(d)(1).

The ALJ concluded that plaintiff had not established any "severe" mental impairment(s). R. at 18. The ALJ also applied the "special technique" to plaintiff's evidence of mental impairments and determined that plaintiff had:

> no restriction in understanding, remembering, or applying information; no difficulties in interacting with others; no difficulties in maintaining

> concentration, persistence or pace; and <u>mild difficulties in adapting or managing oneself</u>.

R. at 18 (emphasis added). In reaching these conclusions, the ALJ relied in part on evidence that plaintiff's psychological symptoms were well-controlled with medication. *Id*. The ALJ also relied on a psychiatric consultative examination by Jeanne Shapiro, Ph.D, who concluded in relevant part that:

> Vocationally, the claimant . . . . <u>may have mild limitations regarding her ability to learn new tasks</u> given that she complains of memory deficits . . . . <u>There appear to be mild limitations regarding her ability to deal with stress.</u>

R. at 621 (emphases added).

Plaintiff argues that the ALJ failed to explain why these mild limitations were not reflected in her RFC. Pl.'s Mem. at 17. The Commissioner responds that the ALJ included a discussion of plaintiff's mental impairments as part of his RFC determination. Def.'s Mem., Dkt. No. 20 at 12.

"Although the ability to handle work-related stress is an important component of the RFC determination, it is not a roadblock to competitive work under all circumstances." *Cheri Lee H. v. Comm'r of Soc. Sec.*, 2020 WL 109007, at *11 (N.D.N.Y. Jan. 9, 2020) (citation omitted).

Upon review, this argument must also be rejected. Notably, plaintiff does not contend that the ALJ should have found that she suffers from a "severe" mental impairment. And as discussed *supra*, the ALJ properly discounted

- 19 -

Dr. Sennett's assessment of more restrictive limitations, including the mental limitations she assessed. R. at 21. Thus, because the ALJ clearly considered plaintiff's mental impairments as part of his larger RFC analysis, plaintiff's argument must be rejected. *See, e.g., Hanson v. Comm'r of Soc. Sec.*, 2016 WL 3960486, at *4 (N.D.N.Y. June 29, 2016) (Report & Recommendation of Carter, M.J.) (explaining that the ALJ discharged his obligations by including discussion of non-severe mental impairments at step four), *adopted by* 2016 WL 3951150 (N.D.N.Y. July 20, 2016) (Suddaby, J.).[6]

## IV. <u>CONCLUSION</u>

The ALJ applied the appropriate legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1. Plaintiff's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's final decision is AFFIRMED; and

4. Plaintiff's complaint is DISMISSED.

---

[6] Even assuming otherwise, the failure to credit and incorporate this "mild" limitation in adapting and managing oneself would not warrant remand. As the Commissioner explains, limitations in tolerating stress or learning new tasks remain compatible with "unskilled work activity." Def.'s Mem. at 13–14.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 16, 2021
      Utica, New York.